This case has a long and complex procedural history, during which defendants have paid cash compensation and medical costs incurred during much of the period since the injury, but the primary causation question has yet to be finally determined. The file contains four Deputy Commissioner Opinion and Awards and various orders and appeals. The overall information in this case is necessarily simplified in this Opinion and Award and addresses the stipulated issues in the pre-trial order (incorporated herein by reference) presented to Deputy Commissioner W. Joey Barnes prior to the final hearing on this matter. The major issue for the appealing defendants is causation. As to whether the defendants are entitled to this review by the Full Commission, the undersigned's order of March 18, 1994 is incorporated by reference.
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission makes the following:
FINDINGS OF FACT
The following either were entered into by the parties in a pre-trial order or at the hearing before the Deputy Commissioner as
STIPULATIONS
1. All parties are properly named in this matter and plaintiff and defendant-employer are bound by the provisions of the North Carolina Workers' Compensation Act. Liberty Mutual is the compensation carrier on the risk for the time in question.
2. Previous Opinion and Awards entered by Deputy Commissioner Edward Garner, Jr. have taken care of all jurisdictional matters, including normal stipulations.
3. Pursuant to an Interlocutory Opinion and Award, which was entered by Deputy Commissioner Garner on 19 December 1990, plaintiff was found to have a compensable accident and was entitled to a period of temporary total disability payments in the amount of $308.00 per week for thirty weeks.
4. Subsequently, there was an Opinion and Award entered by Deputy Commissioner Garner on 11 September 1991, an Order Amending Opinion and Award entered by Deputy Commissioner Garner on 17 September 1991, and a Supplemental Opinion and Award entered by Deputy Commissioner Garner on 15 October 1991.
5. From those three Opinion and Awards, defendants appealed. By Order of the Full Commission, however, filed on 7 January 1992, the appeals were dismissed since there had not been a final award.
6. Pursuant to Deputy Commissioner Garner's Order of 15 October 1991, the remaining issue regarding any permanent partial disability, if any, was deferred pending a final resolution of this case after the required treatment is completed.
7. Defendants contend that the treatment as set forth in Deputy Commissioner Garner's Order has been obtained, while plaintiff contends that it has not, since plaintiff has been referred to Dr. Chewning of the Miller Orthopedic Clinic for further evaluation and treatment.
8. In addition, the undersigned takes notice of, and incorporates the stipulations reflected in, the Order by Deputy Commissioner Edward Garner, Jr., filed on 10 May 1990, the Interlocutory Opinion and Award by Deputy Commissioner Garner, filed on 19 December 1990, the Orders by Deputy Commissioner Garner, filed on 3 January 1991 and 25 June 1991, the Opinion and Award by Deputy Commissioner Garner, filed on 11 September 1991, the Order Amending Opinion and Award, filed by Deputy Commissioner Garner on 17 September 1991, the Supplemental Opinion and Award, filed by Deputy Commissioner Garner on 15 October 1991 and the Order for the Full Commission, filed by Acting Chairman Harold Davis on 7 January 1992.
9. The parties contend that the issues for hearing are the following:
A. Whether the Employee's current problems relate to his original injury?
B. Has Employee reached maximum medical improvement so that the issue of permanent partial disability can be determined?
C. If Employee has reached maximum medical improvement, what compensation is the Employee entitled to recover?
D. What further medical treatment is the Employee entitled to recover?
FINDINGS OF FACT
1. Plaintiff suffered an injury by accident arising out of and in the course of his employment on or about August 14, 1987, at the Food Lion Plant in Salisbury, North Carolina. At the time of the injury, Mr. Sweezy was a long-haul truck driver. While personally unloading his truck — specifically, pulling a load of milk off the truck — Mr. Sweezy suddenly experienced severe pain in his back, his legs gave way, and he fell to the floor. Plaintiff promptly made a verbal report of said injury to representatives of the defendant-employer in Kingsport, Tennessee, and told them he would not be capable of handling his next assigned load. Plaintiff sustained an injury to his back on August 14, 1987 as a direct result of a specific traumatic incident of the work assigned to him. At the time of his injury by accident, plaintiff's average weekly wage was greater than $462, rendering the maximum compensation rate for 1987 of $308 per week.
2. Following plaintiff's injury by accident, he saw a succession of doctors. During the taking of the deposition of his last doctor, Dr. Samuel J. Chewning, Jr., defendants stipulated that plaintiff's complaints since 1987 have been consistent, as they are portrayed in his medical records.
3. Dr. W. Esley Jones, a family practice physician, first saw plaintiff following the accident on August 15, 1987, and continued to see plaintiff through the time of his deposition. Dr. Jones' initial impression was muscular injury, but plaintiff's complaints persisted, suggesting nerve intrapment or some other undiscovered problem. Dr. Jones testified that he had no authorization from the carrier to refer him, but believed plaintiff needed to see a specialist. On the date of the deposition, October 18, 1990, it was still his opinion that plaintiff could not work and was no better than at the the time of the injury by accident in 1987. Dr. Jones did not believe plaintiff's problem was psychological, or at least not solely that.
4. Plaintiff next saw Dr. Johnson, neurosurgical specialist, in November of 1987. Upon physical exam, the doctor's impression was probable herniated disc at L4-5. But after a myelogram and CT scan did not confirm that diagnosis he referred plaintiff to Dr. Swartz.
5. On October 26, 1989, Dr. Swartz opined that there was evidence of L5 nerve root irritation, that plaintiff had reached maximum medical improvement, and that plaintiff could work with limitations. He rated plaintiff with 10-15% permanent partial impairment to spine as a result of the injury by accident of August 14, 1987.
6. Plaintiff made unsuccessful attempts to return to normal, continuous employment, including working with another employer driving a dump truck.
7. At the request of defendant-carrier, plaintiff was seen by Dr. Sweet, a neurosurgeon. Dr. Sweet examined the plaintiff and reviewed plaintiff's medical records. He concluded that plaintiff had a 5% permanent partial disability of the spine due to a chronic low back pain of unclear etiology, and that the prognosis for his return to work was poor since he had not worked in over 2 years. Dr. Sweet noted plaintiff's "odd hopping, limping gait," which he took to be a sign of exaggerated pain and malingering, or a psychological problem. Both Dr. Sweet ("for completeness") and Dr. Jones felt that plaintiff should have an MRI.
8. On May 7, 1992 plaintiff was seen by Dr. Gardner, a neurologist. He noted that a lumbar and pelvic MRI done on May 20, 1991 may be indicative of L4-5 lateral disc changes. A lumbar CT scan showed a similar situation in June of 1991.
9. Plaintiff saw Dr. Chewning, an orthopedic surgeon with a sub-specialty in the spine, from August 6, 1992, to April 2, 1993. Dr. Chewning stated that plaintiff's complaints were consistent from all doctors. In 1992 Dr. Chewning suggested new tests and, after viewing the MRI, CT scan and myelogram obtained, he diagnosed a lateral herniated disc in the same area, the L4-5 level, as Dr. Johnson had identified in November of 1987. Dr. Chewning emphasized in his deposition testimony that the MRI technology he utilized was much more advanced ("a fourth generation machine") than it was in 1987. Dr. Chewning testified on April 29, 1993 that he did not feel plaintiff had reached maximum medical improvement. He recommended decompression and fusion surgery as offering the best chance for significant improvement, although "by no means . . . a curative procedure." He testified that the accident could have caused, and was consistent with, the injury he diagnosed. The recommended surgery would give plaintiff relief from effects of the subject compensable injury.
10. Plaintiff's current back problem is causally related to the injury by accident of August 14, 1987. Plaintiff relates the injury to that accident, and there is no evidence of any other back trauma in the record that might have triggered his symptoms. Plaintiff's complaints began immediately after the incident at Food Lion, and his description of symptoms have been consistent with all his doctors. Objective tests with improved diagnostic equipment have belatedly revealed concrete evidence of a herniated disc at the level consistent with plaintiff's complaints of pain to his doctors since his injury by accident.
11. When last seen by Dr. Chewning on April 2, 1993, plaintiff was not capable of working and had not reached maximum medical improvement.
12. Plaintiff has been temporarily totally disabled since his injury by accident in 1987.
13. Plaintiff is in need of further treatment, including decompression and fusion surgery at the L4-5 level, if recommended by Dr. Chewning, and any psychological condition caused or exacerbated as a direct result of the injury.
14. As no prior orders to pay compensation (beyond that voluntarily paid by defendants), have become final and enforceable, plaintiff is not entitled to penalties or interest.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to have paid by defendants all medical expenses incurred or to be incurred as a result of his injury by accident, including surgery if recommended by Dr. Chewning, so long as these treatments effect a cure, give plaintiff relief or shorten the period of disability. N.C.G.S. §97-25 and 97-2(19); Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993).
2. Plaintiff is entitled to temporary total compensation as a result of her injury by accident at the rate of $308 per week from August 15, 1987 through April 2, 1993, less credit for the amount of temporary total compensation defendant has heretofore paid and wages plaintiff has heretofore earned during unsuccessful work attempts. N.C.G.S. §§ 97-29 and 97-42.
3. As no prior orders to pay compensation (beyond that voluntarily paid by defendants), have become final and enforceable, plaintiff is not entitled to penalties or interest. N.C.G.S. §§ 97-85, 97-18(e) and 97-86.2.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall continue to pay temporary total disability benefits to plaintiff at the rate of $308 per week covering the period August 15, 1987 and through April 2, 1993, less credit for temporary total disability compensation defendant has heretofore paid and wages plaintiff earned during this period in unsuccessful work attempts. Compensation which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee herein approved. N.C.G.S. §§ 97-25 and 97-42.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident, including recommended surgery by Dr. Chewning, when bills for the same shall have been submitted to and approved by the Commission. N.C.G.S. § 97-25.
3. A reasonable attorney fee in the amount of 25% of compensation accrued shall be deducted from the compensation above-provided and paid directly to plaintiff's counsel. Also, every 4th check to plaintiff for temporarily total disability shall be forwarded directly to plaintiff's counsel. N.C.G.S. §97-90.
4. Defendants shall pay an expert witness fee of $250.00 to Dr. Samuel Chewning, Jr., M.D.
5. Defendants shall bear the costs.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ COY. M. VANCE COMMISSIONER
S/ ________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 2/9/95